### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **NUFIX, INC. AND KEN HORTON,** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **BACTERIN INTERNATIONAL, INC.,** | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiffs, NuFix, Inc. and Ken Horton, and for their Complaint against Bacterin International, Inc., would show unto the Court as follows:

## THE PARTIES

1.      Plaintiff NuFix, Inc. ("NuFix") is a corporation incorporated under the laws of the State of Alabama, with its principal place of business in Jefferson County, Alabama.

2.      Plaintiff Ken Horton ("Horton") (Horton and NuFix are collectively, the "Plaintiffs") is an individual residing in Jefferson County, Alabama.

3.      Upon information and belief, Defendant Bacterin International, Inc. ("Defendant") is a corporation organized under the laws of the State of Nevada, with its principal place of business in Belgrade, Montana.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims asserted by Plaintiffs under 28 U.S.C. §§ 1331 and 1338(a), as some of Plaintiffs' claims arise under the Lanham Act, 15 U.S.C. §§ 1051 – 1127. This Court has supplemental jurisdiction over Plaintiffs' remaining claims under 28 U.S.C. §§ 1338(b) and 1367.

5.     This Court has authority to issue preliminary and permanent injunctions and other equitable relief pursuant to 28 U.S.C. § 2202 (injunctive relief), and 15 U.S.C. § 1116 (Lanham Act).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the Defendant resides within this district, because Defendant is subject to personal jurisdiction here, and because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL BACKGROUND

7.     NuFix is an Alabama corporation originally formed to develop and market certain proprietary technology.  Of particular relevance to this case, NuFix developed a facet fusion allograft (the "Allograft") and a method of manufacturing the same.  NuFix has pending patent applications with respect to various aspects of the Allograft.  The Allograft, its manufacture and related technology are referred to herein as the "NuFix Technology."

8.     Horton is the majority owner of NuFix and the inventor of the NuFix Technology.

9.     The Defendant operates a human tissue bank in Montana.

10.     On June 7, 2007, the Defendant and Horton entered into a confidentiality agreement which prohibited the Defendant from using confidential information about the Allograft and the NuFix Technology for any purpose not approved by NuFix (the "Confidentiality Agreement").  A copy of the Confidentiality Agreement is attached hereto as Exhibit A.  The Confidentiality Agreement was intended to be and was executed for the benefit of NuFix.

11.     Pursuant to the Confidentiality Agreement, NuFix provided the Defendant with confidential information regarding the Allograft and its manufacture (the "Confidential Information").

12.     In late 2007, NuFix and the Defendant orally agreed that Defendant would manufacture Allografts for NuFix.

13.     In October 2007, the Defendant and NuFix entered into a letter of intent and indemnity agreement (the "Indemnity Agreement"). A copy of the Indemnity Agreement is attached hereto as Exhibit B. In the Indemnity Agreement, NuFix agreed to indemnify the Defendant for third party claims against the Defendant that were related to the Allografts. The Indemnity Agreement specifically acknowledged that the parties intended to negotiate and enter into a formal written agreement regarding the continued manufacture of the Allografts by Defendant for NuFix, and further indicated that "[C]onsummation of the transaction is subject to execution and delivery of such definitive agreement and to the terms and conditions expressed therein. Until a formal Allograft Supply Agreement is executed by NuFix and Bacterin, neither shall have any binding obligation and may terminate negotiations at any time with or without cause."

14.     In order to enable the Defendant to manufacture Allografts, NuFix lent the Defendant specialized tooling equipment, including a lathe and customized cutting equipment (the "Tooling") developed for use in NuFix's confidential and proprietary method of manufacturing the Allograft.

15.     NuFix owns all rights to the Tooling and allowed Defendant to utilize the Tooling only for the limited purposes to which the parties' agreed. Defendant currently has this Tooling within its possession.

16.     NuFix has used the name and mark "NuFix" (the "NUFIX MARK") in commerce in connection with the sale of distribution of the Allografts and related services continuously since mid-December 2007. NuFix has expended substantial effort and funds in raising

awareness in the relevant medical communities regarding its Allografts, and these efforts coupled with the clinical success of the product have caused the NuFix name to become well known in the marketplace.

17. Additionally, on February 6, 2008, NuFix filed Application No. 77390360 with the U.S. Patent and Trademark Office to register the NuFix Mark as a federal trademark. NuFix's application for this trademark is currently pending.

18. In December 2007, subsequent to the oral agreement between the Defendant and NuFix and the Indemnity Agreement, the parties began negotiating a formal written agreement.

19. However, the Defendant broke off negotiations with NuFix when one of the primary employees of the Defendant, Jim Walls, who was negotiating the written agreement, left the Defendant's employment.

20. Between December 2007 and June 2008, NuFix repeatedly attempted to get the Defendant to finalize a written agreement between the parties.

21. Defendant ultimately presented NuFix with drafts of a written agreement, but has insisted on terms which are unacceptable to NuFix and run contrary to the parties' previous discussions.

22. Defendant has refused to execute a written agreement that is acceptable to NuFix.

23. Accordingly, NuFix and the Defendant have never entered into a written agreement for the manufacture and distribution of the Allografts.

24. As the above facts indicate, Defendant has no rights in the intellectual property belonging to NuFix, including the NuFix Technology and the NuFix Mark, and has no right to use the name "NuFix" in the advertising and sale of products.

25.     As part of the parties' prior negotiations NuFix had indicated that it would be willing to allow Defendant to act as NuFix's sales representative in certain limited areas using Bacterin's own internal sales force.

26.     NuFix has now become aware that the Defendant has approached various existing and potential customers of NuFix outside of the area in which NuFix indicated that it would allow the Defendant to distribute the Allografts, and has sold Allografts to these customers without NuFix's authorization or approval.

27.     The Allografts in question were manufactured by Defendant using the NuFix Technology, NuFix's Confidential Information, and NuFix's Tooling. Defendant has therefore used NuFix's tangible and intellectual property for Defendant's own profit, and without NuFix's authorization. Defendant has also sold Allografts below the minimum price which NuFix sets for its authorized representatives. Such unauthorized activities cause harm to NuFix, to its relationships with its representatives and customers, and to the market for its products.

28.     Furthermore, Defendant has intentionally caused confusion as to the true source and ownership of the NuFix Technologies and the Allografts, by selling the Allografts under the Defendant's own name and marks, by associating Defendant's name and mark with the NuFix Mark, and by claiming to actual and potential customers of NuFix that Defendant is the true owner of the intellectual property relating to the Allografts and the source thereof.

29.     As an example of such conduct, Defendant solicited business from a local hospital, Brookwood Medical Center, which is located in Birmingham, Alabama using unauthorized, inaccurate and confusing literature. A copy of Defendant's solicitation is attached hereto as Exhibit "C" and is incorporated herein. Defendant used NuFix's tangible and intellectual property for Defendant's own profit, and without NuFix's authorization. Defendant is

also attempting to sell Allografts below the minimum price which NuFix sets for its authorized representatives.

30.    Defendant has used the NuFix Mark in an attempt to exploit the NuFix Technology and in violation of NuFix's rights therein.

31.    Defendant is attempting to capitalize upon and exploit the NuFix Technology and the Confidential Information, which is rightfully the property of NuFix, for Defendant's own financial gain.

32.    Defendant's wrongful actions have and will continue to interfere with NuFix's efforts to develop and market its products and technologies.  NuFix has been and will continue to be damaged and irreparably injured thereby.

## COUNT I
### (Misappropriation of Trade Secrets)

33.    Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

34.    NuFix possesses information concerning its business, including but not limited to methods and processes for developing and manufacturing the Allografts that is not known to the public generally, and which provides NuFix with a business advantage.

35.    NuFix's confidential information constitutes a trade secret in that it is used in NuFix's business; it is part of NuFix's method and process of doing business; it is not generally known in the marketplace; it cannot be readily ascertained or derived from publicly available information; NuFix has undertaken efforts to reasonably maintain the secrecy of its confidential information; and NuFix's confidential information has significant economic value.

36.    Defendant has obtained this information in confidence, and has made unauthorized use of it, in violation of statutory and common law.

37.     Upon information and belief, Defendant has exploited NuFix's trade secrets for the Defendant's own financial gain without NuFix's authorization.

38.     Defendant's violations were intentional and/or done with malice, recklessness, or wantonness.

39.     NuFix has been and will continue to be damaged and irreparably injured by Defendant's wrongful actions.

## COUNT II
### (Federal Trademark Infringement)

40.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

41.     NuFix has established valid trademark rights in the NUFIX Mark under state, federal and common law.  Such mark is inherently distinctive and has acquired secondary meaning in the marketplace.

42.     Defendant has used the NUFIX Mark without authorization and has caused, and threatens to cause, confusion as to the source and origin of the goods and services of both NuFix and Defendant, and the relationship and affiliation between NuFix and Defendant.

43.     Defendant has used in commerce, subject to regulation by the U.S. Congress, in connection with the offering for sale, distribution, and/or advertising of goods or services, a word, term, name, symbol, or device, or combination thereof, which is likely to cause confusion, or to cause mistake or to deceive.

44.     Defendant's acts are in violation of 15 U.S.C. § 1125(a).

45.     Defendant's actions will cause harm to NuFix's business, goodwill, reputation, and customer relations, as well as violate NuFix's proprietary rights in its marks.

46.     Defendant has taken the actions described above with full knowledge of NuFix's established rights in its marks, of the unauthorized nature of its use, and in willful disregard of NuFix's federal, state and common law rights.

47.     NuFix has been and will continue to be damaged by Defendant's wrongful acts if Defendant is not enjoined form using NuFix's mark.

**COUNT III**
**(Federal Unfair Competition and**
**False Designation of Origin)**

48.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

49.     Defendant's wrongful acts as described above constitute unfair competition and false designation of origin prohibited by the Lanham Act, 15 U.S.C. § 1125(a).

50.     Defendant's actions will cause harm to NuFix's business, goodwill, reputation, and customer relations, as well as violate NuFix's proprietary rights in its marks.

51.     Defendant has taken the actions described above with full knowledge of NuFix's established rights in its marks, of the unauthorized nature of Defendant's use, and in willful disregard of NuFix's federal, state and common law rights.

52.     NuFix has been and will continue to be damaged by Defendant's wrongful acts if Defendant is not preliminarily and permanently enjoined from continuing their wrongful conduct.

**COUNT IV**
**(Common Law Trademark Violations**
**and Unfair Competition)**

53.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

54. Defendant knew or should have known that NuFix has a mark which is generally recognizable, and has developed substantial goodwill in the marketplace.

55. Defendant used the NUFIX Mark in an unauthorized fashion and in violation of statutory and common law.

56. Defendant has taken the actions described above with full knowledge of NuFix's mark and goodwill, of the unauthorized nature of their use, and in willful disregard of NuFix's federal, state, and common law rights.

57. Defendant's acts are likely to cause confusion.

58. NuFix has been and will continue to be damaged and irreparably injured by Defendant's wrongful conduct.

59. Defendant's wrongful conduct has and will continue to result in profits to Defendant.

## COUNT V
### (Breach of Contract - Confidentiality Agreement)

60. Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

61. Defendant has breached the Confidentiality Agreement by utilizing the Confidential Information to manufacture Allografts and sell those Allografts for its own purposes and its own profit without authorization from NuFix.

62. Horton has been irreparably damaged by Defendant's breach of the Confidentiality Agreement.

## COUNT VI
### (Intentional Interference with Business Relations
### and Prospective Business Relations)

63.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

64.     With knowledge of the existing and expectant business relations that NuFix had with customers and potential customers, and business affiliates and potential business affiliates, including sales representatives and distributors, Defendant intentionally interfered with those relations.

65.     Defendant was not justified in intentionally interfering with these existing and expectant relations, and NuFix has been damaged by Defendant's intentional interference.

## COUNT VII
### (Trespass to Chattel)

66.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

67.     Defendant's wrongful and unauthorized actions have dispossessed Plaintiffs of their property without the Plaintiffs' consent.

68.     Defendant's exercise of dominion and control over Plaintiffs' property contravenes the Plaintiffs' possessory interest.

## COUNT VIII
### (Declaratory Judgment)

69.     Plaintiffs reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

70.     There is a present and actual controversy between the parties.

72.     NuFix hereby requests, and is entitled to, a declaration of its rights and other legal relations with respect to Defendants, including that:  NuFix owns all rights in the NuFix Technology, along with the Tooling, the NuFix Mark, and all other intellectual property of

NuFix; Defendant has no rights in the NuFix Technology, the Tooling, the NuFix Mark, or any other intellectual property of NuFix, and no right to exploit or use such property and technology.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs pray for judgment in its favor and against Defendant and further prays that this Court:

(i)     issue preliminary and permanent injunctions against Defendant enjoining and restraining Defendant and its agents, servants and employees from manufacturing, producing, exploiting or using the NuFix Technology in any way, including by selling or offering for sale or distributing any products utilizing the NuFix Technology;

(ii)     issue preliminary and permanent injunctions against Defendant enjoining and restraining Defendant and their agents, servants and employees from making unauthorized use of the NUFIX Mark or any other confusingly similar name or mark.;

(iii)     issue preliminary and permanent injunctions against Defendant enjoining and restraining Defendant and its agents, servants and employees from engaging in unfair competition and forbidding them from representing that the NuFix Technology and NuFix's intellectual property is owned by or in the control of Defendant, or that Defendants has any right to make use of such intellectual property and technology;

(iv)     award damages and profits to NuFix pursuant to 15 U.S.C. § 1117(a);

(v)     award reasonable attorney fees, costs and expenses in this action to NuFix pursuant to 15 U.S.C. § 1117(a) and the trade secret laws;

(vi)     award NuFix actual and treble damages pursuant to 15 U.S.C. § 1117;

(vii)     declare NuFix's rights and other legal relations with respect to Defendant, including that Defendant has no rights in the NuFix Technology and the NUFIX Mark and no right to exploit or use them;

(viii)　find that Defendant breached the Confidentiality Agreement and enter a judgment against the Defendant and award compensatory damages to NuFix and Horton in an amount to be determined by the trier of fact;

(ix)　award such other and further relief as this Court may deem just and proper.

**Plaintiff requests a trial by struck jury.**

DATED: August _7_ , 2008.

Respectfully submitted,

Howard P. Walthall (WALTH1113)
James A. Hoover (HOOVJ1490)
Marc P. Solomon (SOLOM7382)
Ellen T. Mathews (MATHE7624)

**OF COUNSEL:**

**BURR & FORMAN, LLP**
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: 205-251-3000
Facsimile: 205-458-5100

**DEFENDANT WILL BE SERVED PURSUANT TO RULE 4 OF THE FEDERAL RULES OF CIVIL PROCEDURE AT THE FOLLOWING ADDRESS:**

Bacterin International, Inc.
600 Cruiser Lane
Belgrade, Montana 59714

# CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT
For
NuFuze allograft dowel for facet fusion

THIS AGREEMENT, made this 7th day of June (month), 2007 (year), between Ken Horton, (hereinafter "Disclosing Party"), and _____(hereinafter "Receiving Party").


## BACKGROUND

The Disclosing Party and Receiving Party wish to discuss and exchange certain items and information related to NuFuze allograft dowel facet fusion systems, components, technologies, and business topics (the "Invention") which the parties hereto consider highly confidential and proprietary.

NOW THEREFORE, the parties hereto, intending to be legally bound in consideration of the mutual covenants and agreements set forth herein, hereby agree as follows:


## 1. **DEFINITIONS**

1.1 **"Invention"** shall mean all information relating to business programs, products, applications, systems, components, technologies, and business topics.

1.2 **"Confidential Information"** shall mean all information provided by Disclosing Party with respect to the Invention regardless of whether it is written, oral, audio tapes, video tapes, computer discs, machines, prototypes, designs, specifications, articles of manufacture, drawings, human or machine readable documents. Confidential information shall <u>not</u> include any of the following:

  (a) such information in the public domain at the time of the disclosure, or subsequently comes within the public domain without fault of the Receiving Party;

  (b) such information which was in the possession of Receiving Party at the time of disclosure that may be demonstrated by business records of Receiving Party and was not acquired, directly or indirectly, from Disclosing Party; or

  (c) such information which Receiving Party acquired after the time of disclosure from a third party who did not require Receiving Party to hold the same in confidence and who did not acquire such technical information from Disclosing Party.

1.3 "Disclosing Party" shall mean the party disclosing information to the other relating to the Invention.

1.4 "Receiving Party" shall mean the party receiving information from the other relating to the Invention.



## 2. **USE OF CONFIDENTIAL INFORMATION**

The Receiving Party agrees to:

      (a) receive and maintain the Confidential Information in confidence;

      (b) examine the Confidential Information at its own expense;

      (c) not reproduce the Confidential Information or any part thereof without the express written consent of Disclosing Party;

      (d) limit the internal dissemination of the Confidential Information and the internal disclosure of the Confidential Information received from the Disclosing Party to those officers and employees, if any, of the Receiving Party who have a need to know and an obligation to protect it;

      (e) limit the internal dissemination of thee Confidential Information and the internal disclosure of the Confidential Information received from the Disclosing Party to those officers and employees, if any, of the Receiving Party who have need to know and an obligation to protect it;

      (f) not use or utilize the Confidential Information without the express written consent of Disclosing Party;

      (g) not use the Confidential Information or any part thereof as a basis for the design or creation of any method, system, apparatus, or device embodied in the Confidential Information unless expressly authorized in writing by Disclosing Party; and

      (h) utilize the best efforts possible to protect and safeguard the Confidential Information from loss, theft, destruction, or the like.

## 3. **RETURN OF CONFIDENTIAL INFORMATION**

All information provided by the Disclosing Party shall remain the property of the Disclosing Party. Receiving Party agrees to return all Confidential Information to Disclosing Party within 15 days of written demand by Disclosing Party. When the Receiving Party has finished reviewing the information provided by the Disclosing Party and has made a decision as to whether or not to work with the Disclosing Party, Receiving Party shall return all information to the Disclosing Party without retaining any copies.

4. **NON-ASSIGNABLE**

This agreement shall be non-assignable by the Receiving Party unless prior written consent of the Disclosing Party is received. If this Agreement is assigned or otherwise transferred, it shall be binding on all successors and assigns.

5. **GOVERNING LAW**

This Agreement and all questions relating to its validity, interpretation, performance, and enforcement (including, without limitation, provisions concerning limitations of actions), shall be governed by and construed in accordance with the laws of the State of _____ (State), notwithstanding any conflict-of-laws doctrines of such state or other jurisdiction to the contrary, and without the aid of any canon, custom or rule of law requiring construction against the draftsman.

6. **NO LICENSE**

Neither party does, by virtue of disclosure of the Confidential Information, grant, either expressly or by implication, estoppel or otherwise, any right or license to any patent, trade secret, invention, trademark, copyright, or other intellectual property right.

7. **BINDING NATURE OF AGREEMENT**

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

8. **PROVISIONS SEPERABLE**

The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

9. **ENTIRE AGREEMENT**

This Agreement sets forth all of the covenants, promises, agreements, conditions and understandings between the parties and there are no covenants, promises, agreements or conditions, either oral or written, between them other than herein set forth. No subsequent alteration, amendment, change or addition to this Agreement shall be binding upon either party unless reduced in writing and signed by them.

10. **ARBITRATION**

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration conducted by the Commercial Division of the American Arbitration Association and in accordance with the rules thereof, conducted in Fargo, North Dakota, or in any other convenient forum agreed to in writing by the parties. Any arbitration award shall be final and binding, and judgment upon the award rendered pursuant to such arbitration may be entered in any court of proper jurisdiction. Notwithstanding the foregoing, either party may seek and obtain temporary injunctive relief from any court of competent jurisdiction against any improper disclosure of the Confidential Information.

IN WITNESS OF THEIR AGREEMENT, the parties have set their hands to it below effective the day and year first written above.

Disclosing Party                    Receiving Party

By: _____         By: _____

Date: _____9/18/07_____             Date: _____9-19-07_____

                                    Address: 600 Cruiser Lane
                                             Belgrade, MT 59714

                                    Phone Number: 406-588-0180

October 1, 2007

Guy Cook
Bacterin International, Inc.
600 Cruiser Lane
Belgrade, MT 59714

     *Re:    Allograft Supply Agreement*

Dear Guy Cook:

     This letter shall serve to evidence the intent of the undersigned parties; namely NuFix, Inc.("NuFix") to enter into a contract to purchase from Bacterin International, Inc. ("Bacterin") tissue for certain allografts for transplantation, including Bacterin providing custom milling services of allografts for NuFix. Accordingly, this letter is evidence of the parties' interim agreement while the remaining terms and conditions of the Allograft Supply Agreement are negotiated and finalized.

**Indemnification.**    This letter is intended to confirm the agreement of NuFix and Bacterin with respect to certain indemnity issues relating to Bacterin's harvesting, cutting, packaging and distributing allograft tissue for use with NuFix's design for spinal plugs used for facet joint fusion for NuFix (the "Services"). The allograft tissue harvested and cut by Bacterin for use with NuFix's spinal plug design is referred to herein as the "Product".

     If a third party claims that Bacterin's performance of the Services, production or Bacterin distribution of the Product infringe any U.S. patent rights, NuFix will (as long as Bacterin is not in default under this letter agreement or any other agreement with NuFix) defend Bacterin against such claim at NuFix's expense and pay all damages that a court finally awards, provided that Bacterin promptly notifies NuFix, in writing, of the claim, and allows NuFix to control, and cooperates with NuFix in, the defense or any related settlement negotiations. However, NuFix has no obligation for any claim based on non-NuFix products, product design, goods or services not provided to NuFix or not prepared or provided in accordance with NuFix's specifications and instructions, and has no obligation for any claim based on a modified version of the Product or the Services or the combination, operation, or use of the Product or Services with any product, data, or apparatus not approved by NuFix. THIS PARAGRAPH STATES NUFIX'S ENTIRE OBLIGATION TO BACTERIN WITH RESPECT TO ANY CLAIM OF INFRINGEMENT.

     NuFix shall also indemnify, defend, and hold harmless, to the maximum extent permitted by law, Bacterin, its agents, officers, directors, and employees (the "Indemnified Parties") from and against any and all claims, actions, causes of action, demands, damages, liabilities, suits, obligations, loses, penalties, court costs, attorneys fees, and expenses of whatever kind and nature imposed on, asserted against, or incurred by any Indemnified Parties (collectively, "Claims") made by any third party, arising out of, resulting from, attributable to, or in any way related to the Product.

     In connection with any such Claims, NuFix shall be entitled to procure counsel of its choosing to defend Bacterin in said action, provided that such counsel is reasonably acceptable to Bacterin. Further in connection with any such Claims, Bacterin expressly retains the right to be represented by attorneys of its own selection at Bacterin's expense. The exercise of Bacterin's right to select its own attorneys will in no way detract from or release NuFix from NuFix's obligation to indemnify and hold Bacterin harmless hereunder. No compromise or settlement of

1628177 v2

EXHIBIT

B

such Claim may be effected by NuFix without Bacterin's consent unless there is no finding against or admission by Bacterin of any violation of any applicable law or governmental order or any violation of the rights of any person and the sole relief is to be paid or otherwise provided by and in the name of NuFix.

Insurance. Prior to Bacterin commencing any Service or the production of Product, NuFix shall procure and maintain insurance in types and amounts of coverage sufficient to cover all claims under this Agreement. A Certificate of Insurance will be provided to Bacterin prior to commencement of the Services or production of Product, evidencing that such insurance is in full force and effect. Without limiting the above indemnity requirements, NuFix agrees to save Bacterin harmless from and against any Claim resulting from the failure of NuFix to comply with these insurance requirements.

Contract

It is understood that NuFix and Bacterin will, in good faith, complete negotiations of the October 1, 2007 Allograft Supply Agreement. Consummation of the transaction is subject to execution and delivery of such definitive agreement and to the terms and conditions expressed therein. Until a formal Allograft Supply Agreement is executed by NuFix and Bacterin, neither shall have any binding obligation and may terminate negotiations at any time with or without cause.

If the foregoing meets with your approval, please sign a copy of this letter by Monday, October 1 2007 and return it to Ken Horton with NuFix, Inc. at 174 Oxmoor Road Birmingham, AL 35209.

Upon receipt of a signed copy of this letter of intent, Bacterin shall have its attorney prepare and forward a draft of the formal Allograft Supply Agreement to NuFix's attorney for his review and approval.

AGREED AND ACCEPTED on this 1 day of October, 2007

NUFIX, INC.

By: _____
Name: _____Ken Hovt_____
Title: ____Presiden-t (CEO)___

BACTERIN INTERNATIONAL, INC.

By: _____
Name: ____Guy S. Cook_____
Title: ____CEo_____

July 23, 2008

**To:**

David Watson ;Debbie Hessie and Kenneth Carpenter

 Brookwood Medical Center

**Subject:** Proposal to save implant costs on NuFix facet dowels, from manufacturer Bacterin's Alabama agent, Erwin Mangrum

Dear David,Debbie and Ken,

Thank you for agreeing to compare manufacturer Bacterin's pricing proposals for NuFix-- (same implants and instrumentation you've been purchasing from a distributor)

I will gladly ask Bacterin to email, fax a more formal quote to you, on their letterhead, at anyone's request !

I can bring over the NuFix implant and instrument set immediately, to assure your doctors and staff this is the same they have been using from your current distributor.

For your consideration:

Two NuFix pricing levels, based on monthly volume:

 Level One:

One (1) to nine (9) NuFix dowels per month purchased :

 $1,195.00 per dowel

Level Two:

Ten (10)  NuFix dowels or more purchased :

$995.00 per dowel

( I imagine credits or adjustments issued towards first nine charged at $1195, or something compatible with your system, will be agreeable with Bacterin .)

I look forward to working for all you folks again !

Sincerely,

Erwin Mangrum



**EXHIBIT**

**C**

tabbies'

# NuFix

By BACTERIN INTERNATIONAL, INC.

## Precision Milled Allograft Antimigration Dowel

| Product Code | Major Diameter | Minor Diameter | Fin Offset | Length |
|---|---|---|---|---|
| 10050 | 5.0 mm | 4.0 mm | 1.0 mm | 9.0 mm |

### Surgeon and Hospital CPT/DRG Guide

| CPT Codes used for NuFix | |
|---|---|
| 22612 | Lumbar Spine Fusion |
| 22614 | Spine Fusion, Extra Segment |

| DRG Codes for NuFix | |
|---|---|
| 496 | Anterior to Posterior 360 |
| 497 | Anterior to Posterior Stand Alone |
| 498 | Spinal Fusion No Complications |

For Ordering Information, Please contact your
Bacterin Distributor

This product is distributed by



**BACTERIN**
INTERNATIONAL, INC.
www.bacterin.com
Phone: 888.886.9354 • Fax: 406.388.3380
600 Cruiser Lane, Belgrade, MT 59714

5058A 3/2008 ©2008 Bacterin International, Inc. All Rights Reserved